**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | |
|---|---|
| SHAWNA HOPKINS, | : |
| | : |
| Plaintiff, | : |
| | : CASE NO. 9:04-CV-109 |
| v. | : |
| | : JUDGE RON CLARK |
| NACOGDOCHES COUNTY, TEXAS, | : |
| | : |
| Defendant. | : |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court are Defendant's Motion for Summary Judgment **[Doc. # 55]** and Defendant's Amended Motion for Summary Judgment **[Doc. # 71]**. Responses and replies have been filed for both motions. Plaintiff has sues Nacogdoches County, Texas under 42 U.S.C. §1983 alleging that Plaintiff suffered serious physical harm as a result of Defendant's failure to provide adequate medical care in violation of Plaintiff's constitutional rights. After reviewing the motions and briefs, the court finds that Plaintiff has provided evidence to raise a genuine issue of material fact regarding the constitutionality of Defendant's custom or policy during the booking and intake process of inmates, who refused service at the scene of arrest, but make complaints of bodily injury at the jail. However, Plaintiff has not provided evidence to raise a genuine issue of material fact regarding the Defendant's training and supervision policies. As such, Defendant's Motion for Summary Judgment **[Doc. # 55]** and Defendant's Amended Motion for Summary Judgment **[Doc. # 71]** are **DENIED, in part and GRANTED, in part.**

# I. BACKGROUND

On January 16, 2003, Plaintiff and her son were involved in a single car accident at approximately 10:00 p.m. At approximately 10:08 p.m., Deputy Constable Bruce Walker observed Plaintiff's vehicle driving with its flasher lights and decided to follow the car as it pulled into the front of Plaintiff's residence. *See* Def. Ex. C, Walker's Affidavit. Walker requested backup assistance and called for Emergency Medical Service and went to the vehicle to assist Plaintiff and Plaintiff's son. Sheriff's Deputy Michael Davidson arrived at the scene approximately 10:16 p.m. and found the entire driver's side of the vehicle to be damaged. *See* Def.'s Ex. A, Davidson's Dep. 57:10 - 13; Def.'s Ex. F, Davidson's Affidavit, F-1 at 9. Both officers waited with Plaintiff, Plaintiff's son, and Plaintiff's husband until the EMS and Lieutenant Terry Westmoreland with the Nacogdoches Fire Department arrived at the scene.

The paramedics arrived on the scene at approximately 10:37 p.m. and Paramedic Angela Delaney attempted to examine Plaintiff. *See* Def.'s Ex. D. Plaintiff was removed from the scene and taken to Nacogdoches jail by Deputy Davidson after her signature on the refusal of service form was obtained. *See* Def.'s Ex. G, Westmoreland's Affidavit. Plaintiff was driven to the jail at approximately 10:53 p.m. and arrived at the jail approximately 11:11 p.m. *See* Def.'s Ex. A, Davidson's Dep. 57:2 - 24. At approximately 11:23 p.m., Department of Public Safety Officer Trooper and Deputy Davidson conducted a videotaped sobriety test on Plaintiff that ended at approximately 11:42 p.m. *See* Def.'s Ex. F-2, Videotaped Sobriety Test. The videotape does not indicate that at that time, Plaintiff was exhibiting symptoms of physical injury.

The responsibility of filling out Plaintiff's Nacogdoches County Jail Inmate Medical Record was divided between the Angela Russell, the Defendant's booking officer, and an intake officer. *See* Pl.'s Ex. 6, Russell's Dep. 10:11 - 20. However, regardless of the split in duties, information

regarding a prison's medical problems or general complaints of pain would typically be included on the medical record. *See* Pl.'s Ex. 6, Russell's Dep. 12:14 - 13:5. Plaintiff complained to Officer Russell that her back hurt and that information was not included in Plaintiff's Medical Record. *See* Pl.'s Ex. 6, Russell's Dep. 18:9 - 14; Pl.'s Ex. 9, Plaintiff's Jail Medical Record.

Officer Russell alerted her supervisor, Mr. Kennedy, of Plaintiff's complaint. *See* Pl.'s Ex. 6, Russell's Dep. 18:15 - 19. Mr. Kennedy called the hospital after he was notified about Plaintiff's back hurting. At the conclusion of Mr. Kennedy's call, he told Officer Russell that Plaintiff had signed a refusal of treatment with the ambulance service. *See* Pl.'s Ex. 6, Russell's Dep. 25:20 - 24; 26:7 - 14. After this information was communicated, Mr. Kennedy did not say anything else regarding the treatment or evaluation that should be provided to Plaintiff to address her complaints of her hurt back. *See* Pl.'s Ex. 6, Russell's Dep. 25:14 - 16.[1] The nurse for the jail, Ms. Linda Manning, indicated that she had a folder with Plaintiff's name in her office and while nothing was noted in the file, the mere presence of the file indicates that Plaintiff had been to see her in the nurse's office. *See* Pl.'s Ex. 7, 11:19 - 20; Pl.'s Ex. 10. Ms. Manning does not recall anything about the conversation she had with Plaintiff, but does indicate that she remembered Plaintiff stating she was leaving that day. *See* Pl.'s Ex. 7, 12:20 - 23; Pl.'s Ex. 10.

However, Captain Wendi Channel testified that on the night of January 16, 2003, to her knowledge, there was no policy, written or unwritten, for Nacogdoches County Jail that addressed an inmate's ability to get medical treatment during intake or booking after a refusal of medical treatment was signed at the scene of the arrest. *See* Pl.'s Ex. 8, Channel's Dep., 8:10 - 15.

---

[1] After this point in Officer Russell's Deposition, the court notes that the majority of her remaining testimony consisted of answers such as "I do not recall" or "I don't remember." *See* Pl.'s Ex. 6, Russell's Dep. 28:9 - 30:6; 37:10 - 24; 38:2 - 25.

On January 17, 2003, at approximately 1:00 p.m., Plaintiff appeared before Justice of the Peace Dorothy Tigner-Thompson for the magistrate warnings associated with the charges of injury to a child, DWI, unrestrained child, and no insurance that were pending against Plaintiff. *See* Def.'s Ex. J, Tigner-Thompson's Affidavit. Plaintiff was transported to Nacogdoches Memorial Hospital at approximately 1:58 p.m. *See* Def.'s Ex. H, Caldwell's Affidavit. At the hospital, Plaintiff was found to have a "fracture subluxation injury" and was admitted to IMC and placed in a cervical traction. *See* Def.'s Ex. B, S. Hopkin's Dep., Dep. Ex. 8.

Plaintiff now brings this case under 42 U.S.C. § 1983 against Defendant Nacogdoches County, Texas for deliberate indifference to her serious medical needs since she was denied medical care. Defendant filed a motion for summary judgment on the grounds that it did not act with deliberate indifference in denying Plaintiff's request for medical attention or in failing to train its jailer employees.

## II. STANDARD OF REVIEW

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)). In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment

evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. ANALYSIS

**Municipal Liability under 42 U.S.C. § 1983 - Custom or Policy**

Plaintiff alleges 42 U.S.C. § 1983 violations against Nacogdoches County, Texas. For purposes of § 1983 litigation, municipalities are persons. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978). Actions by officers or employees alone do not render the governmental bodies liable under § 1983. *Monell*, 436 U.S. at 694, 98 S. Ct. 2038-39. There is no *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 663 n.7, 98 S. Ct. at 2022 n.7. Therefore, at the summary judgment stage, Plaintiff must present evidence that would demonstrate a municipal employee's subjective indifference and additionally submit evidence that would allow a reasonable jury to find that the municipal employee's act 'resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [Plaintiff's] constitutional rights.' *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). In other words, taking the evidence in the light most favorable to the non-moving party, Plaintiff must demonstrate a municipality's policies are the moving force behind the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 190, 389, 109 S. Ct. 1197, 1205 (1989).

A plaintiff may prove policy or custom in one of two ways. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). First, by showing an official policy statement, ordinance, regulation, or decision adopted and promulgated by the official policymaking authority. *Id.* Second, a "policy or custom" may be shown by proving a widespread practice, so common and well settled as to constitute a custom that represents official policy. *Id.* A single incident, or even a few incidents without more is generally not sufficient to render governmental bodies liable under § 1983. *See Pineda v. City of Houston*, 291 F.3d at 329.

The Defendant's written policy regarding medical information gathered at booking requires that information about past and present medical conditions, as well as information regarding any signs of injuries, will be obtained from the inmate at the time of booking. *See* Pl.'s Ex. 12. The policy further states, "Nacogdoches County Jail will not accept an unconscious inmate, a[n] inmate who has obvious serious injuries until a doctor's release indicating treatment and order for care, or a refusal signed by the inmate and doctor has been obtained.

The policy that Plaintiff complains of is an alleged unwritten policy to rely on the refusal of service form signed at the scene of arrest, regardless of the time it was signed and even when a request for medical care is made at, or after, the time of intake and booking. At this stage of the proceedings, evidence is of course limited, and the court must view the evidence in the light most favorable to Plaintiff. Under these circumstances, Plaintiff has produced evidence of a policy or custom of reliance on "refusal of treatment" form signed before a person arrives at the jail to ignore any new health complaint, request for medical care, or obvious deterioration in an inmate's condition at the jail once an inmate is at the jail.

Here Plaintiff has presented evidence that, while she was at the jail, she made complaints about her neck and back, that she was in pain, that she was stiff, and that her neck was bent in an awkward position. Of course, at this stage, the court may not make credibility determinations, and must accept this evidence as true. Officer Russell agreed that Plaintiff lodged a complaint regarding her back pain. While Nacogdoches County Jail's written policy required that such a complaint be written down on Plaintiff's Intake Medical Form, the notation was never made. Instead, the testimony shows that Officer Russell sought guidance from her supervisor Mr. Kennedy. However, Mr. Kennedy failed to provide direction for care and/or evaluation of Plaintiff's new complaint of

pain and request for medical care based on the fact that Plaintiff had signed a refusal of medical service approximately 1 ½ to 2 hours earlier in the evening. Based on the limited information before the court, which again must be viewed in the light most favorable to Plaintiff, there is evidence that a person whose symptoms of injury do not manifest themselves until after book-in will, in accordance with official custom or policy, be ignored. The deficiency of such a policy, if it actually exists, is that even severe contusions, muscle strains, sprains, and back injuries may not, in some cases, become apparent until some hours after a traumatic event.

It is well established that Eighth Amendment principles require that adequate medical care be given to incarcerated prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). It is also well established that when a person is taken into custody and held against his will, "the Constitution ... imposes a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Because a "special relationship" exists between the prisoner and the prison officials, the Defendant has a general duty to protect Plaintiff's well-being and ensure her "reasonable safety" while incarcerated. *Id.* at 200-01. This duty may not be fulfilled if policy or custom in fact permits, or requires, jailers to ignore a known substantial risk of serious harm based solely on an event outside the scope of the inmate's booking/intake process, namely the mere signing of a form before the inmate ever got to the jail. *See Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002). *See also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994); *Hare v. City of Corinith*, 74 F.3d 633, 650 (5th Cir. 1996) (*en banc*).

**Municipal Liability under 42 U.S.C. § 1983 - Failure to Supervise**

Plaintiff has raised the claim that Defendant has provided constitutionally deficient supervision or training to its officers and jailers. The Plaintiff must present some sort of evidence that Defendant have a policy or custom of not supervising its employees. *Shields v. Twiss*, 389 F.3d 142, 151 (5th Cir. 2004). A claim for failure to supervise can be established by showing "(1) the [official] failed to train or supervise the officers involved; (2) there is a casual connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

Here, Plaintiff does not point to any evidence to suggest that Defendant has failed to supervise or train its employees on how to evaluate inmates who make a complaint of bodily injury or request for medical attention. The Defendant's policy provides that all jailers will receive instruction and training on proper medical screening and will record the pertinent information on the medical information sheet." *See* Pl.'s Ex. 12. Sheriff Thomas Kerss, the sheriff for Nacogdoches County, testified that, "The Basic Jail Operations course includes training in inmate health services, such as observing inmate physical and mental health condition, providing health services to inmates requiring medical, mental, or dental care ..." *See* Def.'s Ex. G, Kerss' Affadavit. Plaintiff, who has the burden of proof, and who must show some evidence to avoid summary judgment, has not controverted this testimony, nor shown that the written training policy is not followed, or was supplement by an unwritten custom specifically dealing with jailer training. *See City of Canton, Ohio v. Harris*, 489 U.S. at 392.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. # 55]** and Amended Motion for Summary Judgment **[Doc. # 71]** are **DENIED**, as to Plaintiff's claim that the County was deliberately indifferent to a serious medical need, **and GRANTED**, as to Plaintiff's claim of the County's failure to train or supervise.

So **ORDERED** and **SIGNED** this **1** day of **July, 2005.**

_____
Ron Clark, United States District Judge